# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | | |
|---|---|---|
| DEBORAH A. PIERI | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 1:11-CV-425-TLS |
| | ) | |
| JP MORGAN CHASE BANK | ) | |
| NATIONAL ASSOCIATION, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Presently before the Court are the Defendant's Motion for Summary Judgment [ECF No. 18] and the Defendant's Motions to Strike [ECF Nos. 33 & 34]. The Defendant seeks summary judgment and requests the Court to strike the Plaintiff's Affidavit [ECF No. 24-5] as well as the Campbell Affidavit [ECF No. 24-14]. This Opinion and Order addresses all outstanding motions relating to the Plaintiff's Complaint.

## BACKGROUND AND STATEMENT OF FACTS[1]

This case arose out of Plaintiff Deborah A. Pieri's termination of employment from Defendant JP Morgan Chase Bank, N.A. (Chase). The Plaintiff began her employment as a Personal Banker (PB) at Chase's Southgate Branch, located at 204 East Pettit Avenue, Fort Wayne, Indiana, on February 21, 2005, at the age of 50. Chase has emphasized customer service by establishing internal policies, known as "behaviors," that employees are responsible for. For PBs, these behaviors include working the lobby, 1-2-3 drills, profile and discovery, branch

---

[1]The Court provides a general background of the facts here. More specific and detailed facts are set forth in the discussion section of the Opinion where relevant.

manager involvement (BMI) and setting appointments.[2] When the Plaintiff began her employment she was the only PB at the Southgate Branch but was one of four at the time her employment was terminated. During the course of her employment with the Defendant, the Plaintiff was supervised by four different branch managers (BM)[3]. Upon the recommendation of the fourth BM, Paul Hargrove, the Plaintiff's employment was terminated on November, 22, 2010, when she was 55 years old.

The Plaintiff received annual performance reviews during her employment with the Defendant. In her 2005 review, covering her first ten months of employment, she received an overall rating of "needs improvement," although BM Delagrange noted that she had "continued to improve in all areas of the PB role." (2005 Performance Review, ECF No. 20-4.) In 2006, she received a "meets expectations" for her overall rating as well as for Sales and Service Behaviors, and BM Wiebke noted her "great job of working the lobby" and good use of the phone setting up appointments. (2006 Performance Review, ECF NO. 20-5.) The Plaintiff was also designated a "National Sales Achiever" in 2006, a distinction given to the top 750 Chase PBs in the United States. In 2007, the Plaintiff again received a "meets expectations" rating for her Sales and Service Behaviors and overall rating, although BM Hart noted that she needed to be more consistent at working the lobby and to manage her time better so that she could see more customers and set appointments. (2007 Performance Review, ECF No. 20-7.) The Plaintiff also received a "meets expectations" rating in 2008 for both Sales and Service Behaviors and her

---

[2] Working the lobby means PBs should greet and work with customers as they walk into the branch because Chase believes most customers are unaware of all the products and services available to them. Profiling and discovery is meant to identify each customer's unique needs and assist them in meeting those needs. 1-2-3 Drills are meant to review the products and services a customer currently has and then recommend any additional products and services, as appropriate. BMI is meant to encourage interaction between branch managers and customers. Setting appointments requires discussing the specific needs of customers at a future date.

[3] Natalie Delagrange was branch manager when the Plaintiff started her employment at the Southgate Branch, followed by Jennifer Wiebke, Larry Hart, and Paul Hargrove, respectively.

overall rating. BM Hart noted improvement in the 1-2-3 Drill and involving the BM in account opening, but felt the Plaintiff needed to do a better job at working the lobby and gathering information for customer profiles as well as better time management to set appointments and see more customers. (2008 Performance Review, ECF No. 20-9.) In her 2009 review, the Plaintiff's rating fell to "needs improvement" for both her Sales and Service Behaviors and her overall rating. As to each of the Behaviors, BM Hart[4] noted that the Plaintiff did not work the lobby consistently, did not use call lists to set up appointments, did not use profiles regularly with existing customers to uncover opportunities, did not use the 1-2-3 Drill with every customer, and did not bring complete profiles to the BM, although he noted that she did involve the BM during account openings. (2009 Performance Review, ECF No. 20-11.)

The Plaintiff also received four written warnings[5] over the course of her employment. The first written warning, issued January 12, 2006, noted that the Plaintiff had not returned numerous phone messages, was not following up well with customers, and was leaving papers in her drawers at the end of the day, contrary to policy expectations. The second written warning, issued July 3, 2008, disciplined the Plaintiff for keeping customer usernames and passwords in her desk and completing an online banking transaction over the phone, against policy. The Plaintiff believes these two write ups were warranted but challenges the final two warnings, both of which were issued by BM Hargrove. (*See* Pieri Affidavit, ECF No. 24-5 at 2.) The third written warning, issued June 22, 2010, warned the Plaintiff that performance in all of the Behavior areas was lacking and that failure to improve and meet expectations risked further

---

[4] While BM Larry Hart signed the 2009 annual review, he and BM Paul Hargrove, who was the interim BM at the time, conducted the performance review together.

[5] Written warnings are formal notices given to employees highlighting performance or conduct problems. The written warnings are designed to identify the performance issues and expected standards of performance, the consequences for failing to sufficiently improve, and the time frame an employee has to improve and meet those expectations.

corrective action, up to termination. On October 7, 2010, the Plaintiff was given a final written warning, where BM Hargrove noted a lack of improvement in the Behaviors. Specifically, he stated the Plaintiff was more proactive in working the lobby but was behind on making follow-up calls and was not completing the 1-2-3 Drill correctly. He also noted that he granted the Plaintiff's request to have four maintenance items taken from her daily duties so that she could see more customers, but still found no sustained improvement. Finally, BM Hargrove noted two incidents where the Plaintiff engaged with customers waiting in the lobby, telling them she would be right with them, when she already had a customer at her desk and other bankers were available to help the waiting customers. The warning indicates that he coached her to finish with a current customer before assisting another customer in the lobby.

BM Hargrove began his tenure at the Southgate Branch on October 1, 2009. He worked as a BM Trainee under the current but outbound BM Larry Hart until January 1, 2010, when he became the Interim BM. Hargrove became the regular BM for the Southgate Branch on March 1, 2010. During this transition Hargrove job shadowed Hart as part of his training and both men were present for the 2009 annual review, conducted on February 26, 2010, where the Plaintiff received her first "needs improvement" evaluation in years. The 2009 review also indicates that the Plaintiff was shopped[6] three times in 2009 with an average score of 83%.

In May of 2010, Hargrove communicated with District Manager (DM) Daniel McCarthy, DM Sandra Schraub, and Larry Hart his desire to issue the Plaintiff a written warning for unsatisfactory performance including a lack of consistent sales behaviors. In a May 17 e-mail, Hargrove stated that he had been coaching the Plaintiff continuously but that there had not been any sustained improvements in any of her behaviors. That same month, the Plaintiff completed a

---

[6] PBs are evaluated by secret shoppers (employed by Chase but act as regular customers) to determine the PB's effectiveness and ensure the PB is offering exceptional customer service. The secret shopper checks to see if the PB is performing a variety of things, including verifying customer's contact information, reviewing existing accounts, recommending convenience products, and offering pre-approved/pre-qualified offers.

"2010 Employee Opinion Survey" where she could express her concerns. In it, the Plaintiff claimed that Hargrove had been exhibiting unprofessional behavior that made branch customers uncomfortable and was doing a very poor job. She also stated that her first two years at Chase were great, but that for most of 2008 and 2009 the BM (Hart) gave his support to another banker. She also claims Hargrove told her that there will not be another "needs improvement" evaluation, implying her employment would be terminated instead.

On June 22, 2010, Hargrove issued the Plaintiff the aforementioned third written warning for poor performance in the behavior areas. On August 10, 2010, Hargrove emailed DM McCarthy to inform him that he had spoken with human resources and was advised to do a final written warning before proceeding to termination. This final written warning was issued on October 7, 2010.

As a Branch Manager, Hargrove lacked the decision-making authority to fire the Plaintiff but recommended to his superiors that she be terminated. In November 2010, Market Manager Clifford Hemmert, Aligned Human Resources Partner Edie Sanborn, Human Resources Partner Darlene Wellington, and DM McCarthy made the decision to terminate the Plaintiff's employment after reviewing her work history, which included the following considerations: 1) the Plaintiff's performance reviews from all four of her BMs; (2) the Plaintiff's history of written warnings; (3) the veracity of Hargrove's recommendation for termination based on his management style and the possibility of transferring the Plaintiff to another branch; (4) the Plaintiff's length of employment with Chase; (5) the Plaintiff's attitude with other PBs; (6) Hargrove's performance as a BM; (7) Hargrove's tenure as a BM; (8) Hargrove's motivation for recommending the Plaintiff's termination; (9) McCarthy's experience as a DM; (10) McCarthy's observations of the Plaintiff's performance; (11) former DM Sandy Schraub's opinion of the Plaintiff; and (12) Hargrove's attempts at coaching the Plaintiff. At the time of her termination, the Plaintiff was both the oldest employee and the employee with the most seniority at the

Southgate Branch. Jennifer Campbell, a younger employee who had been working as a teller, was hired into the newly vacated PB position soon after the Plaintiff's termination.

The Plaintiff filed the instant case on December 21, 2011, alleging that Chase violated the Age Discrimination in Employment Act (ADEA). (Compl., ECF No. 1.) The Plaintiff asserted that she had been subjected to discrimination on the basis of her age and sought compensatory damages for lost income.

On February 8, 2013, the Defendant filed its Motion for Summary Judgment [ECF No. 18], along with a Memorandum in Support [ECF No. 19] and an Appendix of Exhibits [ECF No. 20]. The Plaintiff filed a Response Memorandum in Opposition [ECF No. 23] on March 25, 2013, along with an Appendix of Exhibits [ECF No. 24]. On April 15, 2013, the Defendant filed a Reply [ECF No. 27], along with a Supplemental Appendix of Exhibits [ECF No. 28]. That same day, the Defendant filed two separate motions to strike. The first was an Amended Motion to Strike [ECF No. 33] the Plaintiff's Affidavit [ECF No. 24-5], along with a Memorandum in Support [ECF No. 30]. The second was an Amended Motion to Strike [ECF No. 34] the Campbell Affidavit [ECF No. 24-14], along with a Memorandum in Support [ECF No. 32]. On April 29, 2013, the Plaintiff filed a Response as to each motion to strike [ECF Nos. 35 & 36], and the Defendant filed a Reply as to each motion on May 6, 2013 [ECF Nos. 37 & 38].

This Opinion and Order addresses all outstanding motions relating to the Plaintiff's Complaint.

**SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate if the facts supported by materials in the record show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56. The motion should be granted so long as no rational fact finder could return a verdict in favor of the party opposing the motion. *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson,* 477 U.S. at 249–50; *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also* N.D. Ind. L.R. 56-1(a) (stating that the movant must provide a "Statement of Material Facts" that identifies the facts that the moving party contends are not genuinely disputed). In response, the nonmoving party cannot rest on bare pleadings alone but must use the evidentiary tools listed in Rule 56 to designate specific material facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000); N.D. Ind. L.R. 56-1(b) (directing that a response in opposition to a motion for summary judgment must include "a section labeled 'Statement of Genuine Disputes' that identifies the material facts that the party contends are genuinely disputed so as to make a trial necessary"). According to Rule 56:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, the court must construe all facts in a light most favorable to the nonmoving party, view

all reasonable inferences in that party's favor, *see Bellaver v. Quanex Corp.*, 200 F.3d 485, 491–92 (7th Cir. 2000), and avoid "the temptation to decide which party's version of the facts is more likely true," *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (noting the often stated proposition that "summary judgment cannot be used to resolve swearing contests between litigants"). A material fact must be outcome determinative under the governing law. *Insolia*, 216 F.3d at 598–99. "Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute." *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008).

Under Federal Rule of Civil Procedure 56(c)(4), any affidavit or declaration "used to support or oppose a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." On a motion for summary judgment, a court must disregard parts of an affidavit that fail to comply with this rule. *Cooper-Schut v. Visteon Auto. Sys.*, 361 F.3d 421, 429 (7th Cir. 2004); *Friedel v. City of Madison*, 832 F.2d 965, 970 (7th Cir. 1987). The following statements do not comply with the rule and should be disregarded: "(1) conclusory allegations lacking supporting evidence; (2) legal argument; (3) self-serving statements without factual support in the record; (4) inferences or opinions not grounded in observation or other first-hand experience; and (5) mere speculation or conjecture." *Heltzel v. Dutchmen Mfg., Inc.*, No. 3:06-CV-227, 2007 WL 4556735, at *4 (N.D. Ind. Dec. 20, 2007) (quotation marks and citations omitted). Although "self-serving statements in affidavits without factual support in the record carry no weight," *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 925 (7th Cir. 2004) (emphasis omitted), "a self-serving affidavit supported by facts in the record [can] defeat summary judgment," and the record "may include the self-serving affidavit itself, provided that the affidavit meets the usual requirements for evidence on summary judgment—

including the requirements that it be based on personal knowledge and that it set forth specific facts showing that there was a genuine issue for trial," *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 504 (7th Cir. 2004) (quotation marks and citations omitted).

Any statements or responses that contain legal conclusions or argument, are evasive, contain hearsay or are not based on personal knowledge, are irrelevant, or are not supported by evidence in the record will not be considered by the Court in ruling on a motion for summary judgment. Consistent with its obligations under the federal and local rules, the Court will rely only on material statements of fact which are both admissible and supported by the record compiled at the summary judgment stage.

## DISCUSSION

The Plaintiff contends that the Defendant fired her because of her age, in violation of the ADEA, which prohibits an employer from "'discharg[ing] any individual . . . because of such individual's age.'" *Mullin v. Temco Machinery, Inc.*, 732 F.3d 772, 776 (2013) (quoting 29 U.S.C. § 623(a)(1)); *see also* 29 U.S.C. § 631(a) (limiting protections to those over forty years old). To establish an ADEA violation, "an employee must show that age actually motivated the adverse employment action. Put differently, age must have played a role in the employer's decision-making process and had a determinative influence on the outcome." *Mullin*, 732 F.3d at 776 (citations omitted). To survive summary judgment, a plaintiff must "show evidence that could support a jury verdict that age was a but-for cause of the employment action." *Fleishman v. Cont'l Cas. Co.*, 698 F.3d 598, 604 (7th Cir. 2012) (citations omitted). An employee may prove discrimination through the direct or indirect methods of proof. *Mullin*, 732 F.3d at 776 (citing *Fleishman*, 698 F.3d at 603). The Defendant argues that the Plaintiff cannot establish an

age discrimination claim under either method, whereas the Plaintiff argues that under both methods she has met her burden in ADEA cases of showing that age was a but-for cause of her termination.

## A.    Direct Method of Proof

Under the direct method of proof, the Plaintiff must provide "'either direct evidence or circumstantial evidence that shows that the employer acted based on prohibited animus.'" *Brown v. Advocate S. Suburban Hosp.*, 700 F.3d 1101, 1005 (7th Cir. 2012). "Direct evidence requires that the employer admit its discriminatory intent (e.g., the 'smoking gun' case)." *Mullin*, 732 F.3d at 776. Because the Defendant has not openly admitted to discriminating against the Plaintiff, the Plaintiff must construct "a convincing mosaic of circumstantial evidence that allows a jury to infer intentional discrimination by the decisionmaker." *Phelan v. Cook Cnty.*, 463 F.3d 773, 779 (7th Cir. 2006); *Mullin*, 732 F.3d at 776. The pieces of this mosaic generally take one of three forms. First, "the plaintiffs may show evidence of suspicious timing, ambiguous behavior, statements or comments directed at employees in the protected group, and 'other bits and pieces from which an inference of discriminatory intent might be drawn.'" *Brown*, 700 F.3d at 1105 (quoting *Phelan*, 463 F.3d at 781). Second, the plaintiff "may provide evidence that a 'similarly situated employee received more favorable treatment.'" *Id.* Third, the plaintiff may "provide evidence that the plaintiff 'was qualified for the job in question but passed over in favor of (or replaced by) a person not having the forbidden characteristic, and that the employer's stated reason for the difference in treatment is unworthy of belief.'" *Id.* Circumstantial evidence "must point directly to a discriminatory reason for the employer's action," *Van Antwerp v. City of Peoria, Ill.*, 627 F.3d 296, 298 (7th Cir. 2010), and "a plaintiff seeking to survive summary

judgment must produce enough evidence that a rational jury could conclude that the employer took the adverse action against the plaintiff because he is a member of a protected class." *Mullin*, 732 F.3d at 777.

Under the first category of circumstantial evidence, the plaintiff must submit evidence of suspicious timing, ambiguous oral or written statements or behavior directed at employees of the protected group. The Defendant argues that there is nothing suspicious about the timing of the Plaintiff's termination because there is a systematic record of the Plaintiff's failure to perform the Chase Behaviors over her five-year employment. The Defendant asserts the Plaintiff was lackadaisical in her approach to the Behaviors in performance reviews and that she received numerous written warnings based on her poor performance yet failed to show improvement even after having been coached by the BMs. The Plaintiff argues that she met expectations, having even received praise from the District Manager in May 2009 "for her ongoing improvement, commitment to excellence and doing things the 'Chase Way,'" including mastering a Chase Behavior. To the Plaintiff, it is suspicious that she received her first negative evaluation in four years in February 2010, a period of 9 months since receiving praise for her job performance, when she feels her performance did not waiver. The Plaintiff contends that Hargrove, who became BM in September 2009, is the reason for the sudden turn in the evaluations of her performance and that he discriminated against her due to her age.

1.      **Suspicious Timing**

The Plaintiff believes that it is suspicious timing for her to receive her first negative evaluation in four years, which she received in February 2010 (covering 2009), once Hargrove became the BM, especially when only nine months before, in May 2009, she received praise for her performance from District Manager Greg Dostel "for her ongoing improvement, commitment

to excellence and doing things the 'Chase Way.'" The Plaintiff did "meet expectations" in both her overall rating and Sales and Service Behaviors rating from 2006–2008, according to her annual performance reviews. That she received written warnings in January 2006 and July 2008 did not appear to affect her overall rating on those annual reviews. The Plaintiff correctly points out that Hargrove was involved in both of her 2010 written warnings as well as the negative annual performance review for 2009, all of which identified inadequate performance of the Behaviors. To say that there was a sudden shift in her evaluations once Hargrove took over is not accurate, however. The negative annual review for 2009, conducted on February 26, 2010, was performed by former BM Larry Hart, with Hargrove in attendance. Clearly it was not only Hargrove who felt that the Plaintiff's performance of the Behaviors needed improvement, and the written warning issued by Hargrove on June 22, 2010, notes not only the verbal discussion between the Plaintiff, Hart, and Hargrove concerning the Behaviors that needed to be followed, but also the lack of improvement in those Behaviors subsequent to the annual review. The record shows that Hart also had concerns with the Plaintiff's performance of the Behaviors, which cuts against a sudden and suspicious turn of events once Hargrove took over.

As for the note of handwritten praise the Plaintiff received in May 2009 from DM Dostel, clearly the Defendant praised the Plaintiff's work on Module 5, a module designed to train PBs in certain behaviors. However, "[t]he fact that an employee does some things well does not mean that any reason given for his firing is a pretext for discrimination." *Anderson v. Stauffer Chem. Co.*, 965 F.2d 397, 403 (7th Cir. 1992). That BM Hart notified DM Dostel that the Plaintiff did well on this module, for which Dostel gave her praise, does not translate into satisfactory performance of all the behaviors.

**2.        Statements or Comments**

12

The Plaintiff argues that Hargrove made comments that might seem irrelevant or trivial, but when viewed as a whole or in combination with other evidence reveals age discrimination. The first highlighted comment is that Hargrove referred to the Plaintiff as "older." "To raise an inference of discrimination, comments must be '(1) made by the decision maker, (2) around the time of the decision, and (3) in reference to the adverse employment action.'" *Teruggi v. CIT Grp./Capital Fin., Inc.*, 709 F.3d 654, 661 (7th Cir. 2013) (quoting *Hemsworth v. Qoutesmith.Com, Inc.*, 476 F.3d 487, 491 (7th Cir. 2007)). The Plaintiff does not provide any evidence to put this comment into context; she merely asserts it was said. Thus, this comment cannot raise an inference of discrimination, for there is no evidence that this comment was made around the time of the decision or in reference to the Plaintiff's termination.[7]

The Plaintiff also asserts that Hargrove told another employee in May 2010 that he wanted to fire the Plaintiff. This statement, by itself, does not relate to age. Of course Hargrove wanted to fire the Plaintiff; he recommended it to his superiors. The Plaintiff fails to provide any evidence from which a jury could infer Hargrove wanted to fire her due to her age. His motivation just as easily could have been because of her performance, and the Court is not required to draw inferences that are supported by only speculation. *See Johnson v. Koppers, Inc.*, 726 F.3d 910, 915 (7th Cir. 2013).

Finally, the Plaintiff argues that numerous statements made by Hargrove in his written warnings are simply false. Specifically, that he repeatedly coached the Plaintiff, that he helped her with maintenance items, that the Plaintiff was not a team player, and that the Plaintiff did not

---

[7] The Plaintiff also contends Hargrove made statements regarding younger female employee's "boobs" and "butt," demonstrating his favoritism towards younger employees. While such statements, if true, would show a lack of judgment and professionalism, they fail to raise an inference of discrimination for the same reason; that the Plaintiff fails to provide any evidence to put these statements into context.

respect her coworkers or customers. First, these comments do not relate to the Plaintiff's age and the Plaintiff does not provide any evidence from which a factfinder could infer a discriminatory intent from these comments. Second, the Plaintiff does not produce any evidence that these comments are false, or from which a factfinder might infer that they are false.

The Plaintiff argues the Hargrove's discriminatory animus motived him to produce false negative performance evaluations in an effort to convince his superiors to terminate her employement. The Seventh Circuit has "long recognized that a final decision-maker's reliance on an improperly motivated recommendation from a subordinate may render the corporate employer liable because the subordinate acts as the firm's agent. *Smith v. Bray*, 681 F.3d 888, 897 (7th Cir. 2012) (citing *Shager v. Upjohn Co.*, 913 F.2d 398, 405 (7th Cir. 1990) ("If the [formal decision-makers] acted as the conduit of the [subordinate's] prejudice—his cat's paw— the innocence of [the decision-makers] would not spare the company from liability.")). "Cat's paw" liability may be imposed on an employer "where the plaintiff can show that an employee with discriminatory animus provided factual information or other input that may have affected the adverse employment action." *Id*. (citations omitted). "[W]hen a subordinate harbors a discriminatory animus and advises the ultimate decision-maker to take an adverse action against the plaintiff, that evidence can support a claim against the corporate employer." *Smith v. Bray*, 681 F.3d 888, 900 (7th Cir. 2012). It is true that Hargrove recommended the Plaintiff be terminated and wrote the two final written warnings, which undoubtedly were part of the committee's decision-making process. In that sense, he had some input that may have affected the Plaintiff's termination. However, the Plaintiff must show that Hargrove had a discriminatory animus and improperly influenced the decision makers. *See Cook v. IPC Int'l Corp.*, 673 F.3d 625, 628 (7th Cir.2012) ("the 'cat's paw' metaphor refers to a situation in which an employee is

fired or subjected to some other adverse employment action by a supervisor who himself has no

discriminatory motive, but who has been manipulated by a subordinate who does have such a

motive and intended to bring about the adverse employment action"); *accord Staub v. Proctor*

*Hosp.*, ––– U.S. ––––, 131 S.Ct. 1186, 1192–94, (2011). The Plaintiff provides no evidence that

Hargrove exerted improper influence except for the conclusory allegation that his statements in

the written warnings were lies. This allegation lacks any supporting evidence from which a jury

could infer Hargrove is lying, however, and therefore should be disregarded. *See Heltzel*, 2007

WL 4556735 at *4.


3.      *Shager v. Upjohn Co.*

        The Plaintiff spends considerable time in her response brief comparing her case to *Shager*

*v. Upjohn Co.*, 913 F.2d 398 (7th Cir. 1990), arguing that her situation is so similar to the facts of

*Shager* that summary judgment against her would be inappropriate. In *Shager*, the plaintiff—a

seed salesman—was assigned to an unpromising territory while the promising territory was

given to younger salesmen. Although his younger supervisor had set him up to fail, the plaintiff

still outperformed the younger salesmen. When the time came for evaluations, the supervisor

made excuses for the younger salesmen, stating that a poor harvest and lack of experience

justified their sales. However, the plaintiff was put on probation for alleged deficiencies in his

performance. When these alleged performance deficiencies persisted, the supervisor

recommended to the committee responsible for reviewing personnel actions that the plaintiff be

fired. He was subsequently fired by the committee. After bringing an ADEA claim against his

employers, the district court granted summary judgment in favor of the defendants. The Seventh

Circuit reversed, however, holding that the plaintiff had "produced evidence from which a

rational factfinder could infer that the company lied in saying that it fired Shager because he was an unsatisfactory worker." *Id.* at 401.

The Plaintiff asserts that, like in *Shager*, she was targeted by her supervisor, set up to fail, and that the reasons for her termination—alleged poor performance of company expectations— were lies and a pretext. The *Shager* case is instructive, yet while the Plaintiff focuses on the parallels between the cases, it is the differences between the Plaintiff's evidence and the evidence presented by the plaintiff in *Shager* that requires a different outcome. The *Shager* court noted that to establish a prima facie case of age discrimination, the plaintiff was required to show more than that he was replaced by a younger person; to counter the defendant's argument that he was deficient in his performance, he was also "required to show that his performance in the job was adequate." *Id.* at 400. Shager "presented evidence that his alleged performance deficiencies were a pretext for firing him—evidence not only that those deficiencies were greatly exaggerated but also that they were offset by his skill and energy in generating a good sales performance in an unpromising territory." *Id.* at 401. He produced evidence of his supervisor's animosity to older workers and that he was a satisfactory employee who was meeting expectations. With that evidence, a jury "could infer that the company lied in saying that it fired Shager because he was an unsatisfactory worker." *Id.* The Plaintiff in the present case claims Hargrove lied about her performance of the Behaviors, but she presents no evidence to support that allegation. The *Shager* court noted that "a case where the plaintiff's only evidence of age discrimination is that he was replaced by a younger worker and that the stated ground for firing him was spurious . . . would be the kind of case that just barely survives the employer's motion for summary judgment." *Id.* at 402 (noting that Shager presented even more evidence than he had to). Shager produced sufficient evidence by which a jury could infer that the company lied about his

performance being unsatisfactory. The Plaintiff in the present case states she was a satisfactory worker and that Hargrove is lying, but this statement is without factual support in the record. The Plaintiff's mere assertion is insufficient, and "[the court is] not required to draw inferences that are supported by only speculation and conjecture." *Johnson*, 726 F.3d at 915 (internal quotes and citation omitted) (finding that while it was clear from the record that the defendant and plaintiff did not like each other, the plaintiff failed to provide any evidence that the defendant's animosity was motivated by a discriminatory bias). The Plaintiff has not produced any evidence from which a jury could infer Hargrove is lying about her performance. The only evidence the Plaintiff produces that addresses the Plaintiff's job performance is the affidavit of Jennifer Campbell, who stated that she believed Hargrove was targeting her and that the Plaintiff was the best PB at the Southgate Branch. However, "[t]he mere submission of materials from a co-worker or supervisor indicating that an employee's performance is satisfactory . . . does not create a material issue of fact. *Anderson v. Baxter Healthcare Corp.*, 13 F.3d 1120, 1125 (7th Cir. 1994); *see also Kephart v. Institute of Gas Tech.*, 630 F.2d 1217, 1223 (7th Cir.1980), *cert. denied*, 450 U.S. 959 (1981) (affirming the determination of the district court that affidavits of fellow employees stating that the plaintiff's performance was satisfactory was not enough to create a material issue of fact as to the quality of his work where employer felt that his work was unsatisfactory).

The Plaintiff also briefly argues under the second category of circumstantial evidence that other similarly situated employees received more favorable treatment. The Plaintiff argues that Hargrove spent all his time with the younger employees, while excluding her, and diverted customers to the younger PBs, to her detriment. The only evidence produced to support these allegations is the affidavits of Campbell and the Plaintiff. The Plaintiff has thus provided her

opinion and the opinion of her coworker, but has not provided any other evidence that lends factual support to their opinions. Assuming the Plaintiff is correct, the fact that Hargrove spent more time with other PBs and steered customers their way does not mean age was the motivating factor. In the employee comments section of the 2009 annual review, the Plaintiff stated that she felt BM Hart was steering customers to another banker in an effort to help that banker reach the National Sales Conference. Clearly the Plaintiff felt that BM Hart was focusing his support elsewhere, which she thought unfair. (2009 Performance Review, ECF NO. 20-11, at 3.) That a BM might choose to focus his or her support towards one banker does not by itself prove any animus towards the nonfavored employee, much less animus based on a protected characteristic.

Under the direct method, the burden is on the Plaintiff to construct a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decision maker. The Court finds that the Plaintiff has not met this burden. While the Plaintiff has made multiple conclusory allegations, she has not pointed to any factual support in the record from which a jury could infer the Defendant intentionally discriminated against the Plaintiff based on her age.

**B.      Indirect Method of Proof**

Under the indirect, burden-shifting method of proof, a plaintiff must first establish a prima facie case of discrimination by providing evidence indicating that: (1) he is a member of a protected class; (2) he was performing well enough to meet his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees not in his protected class were treated more favorably." *Coleman v. Donahoe*, 667 F.3d 835, 845 (7th Cir. 2012). If the plaintiff meets his burden of establishing a prima facie case, a rebuttable

presumption of discrimination arises, and the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for the challenged action. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *see Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, 751 (7th Cir. 2006). If the defendant provides a legitimate, nondiscriminatory reason for its actions, the burden shifts back to the plaintiff to offer evidence indicating that "the proffered reason is actually a pretext for illegal discrimination." *Grigsby v. LaHood*, 628 F.3d 354, 359 (7th Cir. 2010) (citing *Adelman–Reyes v. Saint Xavier Univ.*, 500 F.3d 662, 666 (7th Cir. 2007)).

The first and third elements of a prima facie case are not at issue, for the Plaintiff was 55-years-old when her employment was terminated, making her a member of the protected class who suffered an adverse employment action. Furthermore, for the purpose of this motion for summary judgment, the Defendant has conceded that the Plaintiff was replaced by a younger personal banker. *See* Def.'s Reply Br., ECF No. 27, at 5 n.2. Thus, to establish a prima facie case of discrimination and shift the burden to the Defendant, the Plaintiff needs only to provide evidence that she satisfactorily met the legitimate expectations of her employer. The Defendant asserts that the Plaintiff cannot meet this burden.

The Plaintiff's arguments under the indirect method trace her previous arguments made under the direct method. She argues that she not only had the most seniority of any employee at the Southgate branch but also was the most successful personal banker, having been the only one to reach the National Sales Achiever distinction. She cites her string of annual performance reviews where she had met expectations and states that this level of performance continued after Hargrove became branch manager and issued his written warnings. She again alleges that Hargrove targeted her, steered customers away from her, and lied about his efforts to coach and help her, offering her own affidavit and the affidavit of Jennifer Campbell in support. All of

these arguments fail for the same reasons discussed above with respect to the direct method of proof.

"In most cases, when a district court evaluates the question of whether an employee was meeting an employer's legitimate employment expectations, the issue is not the employee's past performance but 'whether the employee was performing well at the time of [her] termination.'" *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 329 (7th Cir. 2002) (quoting *Karazanos v. Navistar Int'l. Transp. Corp.*, 948 F.2d 332, 336 (7th Cir. 1991)) (finding that an employee's termination based on poor performance in the 18 months preceding her termination was legitimate). The Plaintiff contends her performance of the behaviors was steady throughout her employment, and that Hargrove is lying when he says she failed to meet those expectations. However, Hargrove was not alone in these assessments. Hart supervised the Plaintiff for most of 2009 and issued the negative annual review, not Hargrove. The Plaintiff has not put forward any evidence or argument that Hart and Hargrove both were lying in their assessments of her performance. In addition, Hart identified behavior areas where improvement was needed in the 2007 and 2008 reviews, even though the Plaintiff received an overall "meets expectations" rating.

The Plaintiff submits a daily log she made cataloging the work she did while employed at Chase. She states the log entries in September and October of 2009, when Hargrove started, are essentially the same as the log entries for October 2010, and she argues this provides proof that she continued to satisfactorily perform the behaviors. While the Plaintiff's log does provide some information regarding the customers she helped and the nature of their transactions, it does not address the Plaintiff's performance of the behaviors. For example, we learn nothing from the log about how well the Plaintiff worked the lobby or whether she completed the 1-2-3 drill and used

profile and discovery with each customer. Furthermore, the Plaintiff compares log entries from September and October 2009 to October 2010 as proof that she satisfactorily met her expectations. However, the Defendant gave the Plaintiff a negative evaluation for 2009, citing a need to improve in her performance of the behaviors. Comparable log entries on the dates in question might aide the Plaintiff in showing consistency, but they do not speak to whether the Plaintiff performed satisfactorily.

The Plaintiff states she was performing well enough to meet Chase's expectations, but a bare contention, without supporting evidence, is insufficient for a factfinder to reasonably infer that her job performance was satisfactory. The Court finds that the Plaintiff has not produced sufficient evidence that would indicate she was meeting her employer's legitimate expectations. As such, she fails to establish the second element of a prima facie case of discrimination.

Even if the plaintiff was able to successfully establish a prima facie case of discrimination, she does not meet her burden of producing evidence that the employer's proffered reason is actually a pretext for illegal discrimination. "To demonstrate a material issue of fact as to pretext, [the Plaintiff] must show that 'either (1) it is more likely that a discriminatory reason motivated the employer than the proffered non-discriminatory reason or (2) that an employer's explanation is not credible." *Mullin*, 732 F.3d at 778 (quoting *Hudson v. Chi. Transit Auth.*, 375 F.3d 552, 561 (7th Cir. 2004)). An employer's mere mistake does not constitute pretext; instead, pretext "is a phony excuse." *Id.*

Although the Plaintiff claims that Hargrove's statements in the third and fourth written warnings were untruthful, she produces no evidence to support her conclusory allegation. Unlike the plaintiff in *Shager*, the Plaintiff produces nothing from which a jury could infer that Hargrove's or Chase's explanation is not credible. Even when viewed in the light most favorable

to her, the Plaintiff still has the burden of producing evidence to identify material facts that are genuinely disputed. The only evidence the Plaintiff produces to suggest that the Defendant was lying are the conclusory allegations in her affidavit, and "self-serving statements in affidavits without factual support in the record carry no weight." *Butts*, 387 F.3d at 925.

For similar reasons, the Plaintiff has not shown that it is more likely that a discriminatory reason motivated the employer than the proffered non-discriminatory reason. Each of the Plaintiff's final three annual reviews (2007–2009) include references to aspects of the behaviors where improvement was needed, in addition to the two written warnings in 2010. The record shows multiple members of management reviewing the Plaintiff's work history and evaluating Hargrove's recommendation that the Plaintiff's employment be terminated. The Plaintiff does not present any evidence from which a reasonable factfinder could infer that Chase's reason for her termination was dishonest. *See Everroad v. Scott Truck Sys., Inc.*, 604 F.3d 471, 497 (7th Cir. 2010).

## CONCLUSION

For the foregoing reasons, the Court GRANTS the Defendant's Motion for Summary Judgment [ECF No. 18]. The Defendant's Motions to Strike [ECF Nos. 33 & 34] are DENIED AS MOOT.

SO ORDERED on March 28, 2014.

       s/ Theresa L. Springmann
THERESA SPRINGMANN
UNITED STATES DISTRICT COURT